FILED '09 JUL 07 16:36

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARLTON A. NEWMAN<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS USA, INC.,<br>A Virginia corporation and<br><br>ALTRIA GROUP, INC.,<br>A Virginia corporation,<br><br>Defendants | CASE No: **09-4291**<br><br>**SECT. B MAG. 3**<br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**NOW COMES** Plaintiff, Carlton A. Newman, on behalf of himself and all others similarly situated, by and through his attorneys, The Crow Law Firm, L.L.C., and for his Class Action Complaint against Defendants, Philip Morris USA, Inc., ("Philip Morris") and Altria Group, Inc. ("Altria"), (collectively Defendants"), states as follows:

1. This consumer class action concerns Defendants' manufacturing, marketing, advertising, promotion, distribution and sale of cigarettes labeled and represented as "Light" or Ultra-Light" ("light cigarettes") as delivering less nicotine to consumers and as being less harmful to consumers than regular cigarettes of the same brand, despite Defendants' knowledge that these representations were false, deceptive, misleading and unfair.

## JURISDICTION

2. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.§ 1332(d), because it is a class action filed pursuant to Fed R. Civ. P. 23, Plaintiff and the Class members are of diverse citizenship from Defendants, there are more than 100 Class members, and the aggregate amount in controversy, excluding interest and costs, exceeds $5,000,000.

3. Venue is proper within this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's and the other Class members' claims occurred within this District.

## PARTIES

4. Plaintiff, Carlton A. Newman, is a resident of Orleans Parish, Louisiana.

5. Philip Morris USA Inc. ("Philip Morris") is a Virginia corporation with its principal place of business located in Richmond, Virginia. Philip Morris is a wholly-owned subsidiary of Altria Group Inc., and is in the business of manufacturing, distributing, marketing and selling light cigarettes. During the relevant time period,[1] Philip Morris distributed, marketed, and sold light cigarettes in Louisiana. Among the brand names manufactured, distributed, marketed, and sold by Philip Morris is Marlboro Lights cigarettes.

6. Altria Group Inc. ("Altria") is a Virginia corporation with its principal place of business located in Richmond, Virginia. Altria owns, controls, oversees, and manages

---

[1] Unless otherwise specified, all allegations relate to conduct or practices occurring from January 1, 2005, to the date of Judgment in this action (the "Class Period").

Philip Morris, including Philip Morris's policies and operations.

7.  Defendants, Philip Morris and Altria, have pursued a common plan, design, and course of conduct, acted in concert with, aided and abetted, and otherwise conspired with one another, in furtherance of their common design or scheme to deceive Plaintiff and Class members as described herein. At all times relevant to this lawsuit, Defendants Philip Morris and Altria participated in the scheme of deception described herein in cooperation with and as agents and instrumentalities of one another for the purpose of deceiving and damaging Plaintiff and Class members as described herein. On information and belief, Defendants, Philip Morris and Altria, are juridically linked through contracts governing their management and control through which the scheme described herein has been implemented.

## CLASS ACTION ALLEGATIONS

8.  Plaintiff brings this consumer class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and a Class composed of:

> All Louisiana residents who from January 1, 2005, to the date of Judgment, purchased, not for resale, Defendants' cigarettes labeled as "Light," or "Ultra-Lights". The Class excludes all federal, state, and local governmental entities, and Philip Morris USA Inc.'s and Altra Group Inc.'s, directors, officers, parent corporations, subsidiaries, and affiliates.

The Class seeks economic damages stemming from their purchases of Defendants' light cigarettes. The Class does not seek recovery in this case for any past, current, or future personal injury or health care.

9.  The joinder of all members of the Class is impracticable, as the Class is believed to include thousands of individuals.

10. Plaintiff's claims are typical of those of the other Class members, as they arise from the same course of conduct as the claims of the other Class members.

11. Plaintiff and his counsel will adequately represent and protect the interests of the Class. Plaintiff and the Class have a common interest in this matter and the remedy sought. Plaintiff has no interest antagonistic to that of the Class. Plaintiff has retained counsel who are competent and experienced in class action litigation and who will prosecute this action vigorously on behalf of Plaintiff and the Class.

12. Questions of law and fact common to all Class members are present and predominate over any potential individual issues in this matter, and include, *inter alia*:

   a. whether Defendants misrepresented that consumers of their light cigarettes would be exposed to less tar or nicotine than users of non-light cigarettes of the same brand;

   b. whether Defendants designed their light cigarettes to register lower levels of tar and nicotine when tested through the Cambridge Filter Method by the tobacco industry than the levels actually delivered to consumers;

   c. whether Defendants intentionally manipulated the design and content of their light cigarettes through, *inter alia*: modifying the tobacco blend, weight, rod length and circumference; using reconstituted tobacco sheets and expanded tobacco; and by increasing the smoke PH levels of the cigarettes through chemical processing and the use of additive, such as ammonia, resulting in the delivery of great amounts of tar and nicotine;

   d. whether Defendants were unjustly enriched to the detriment of Plaintiff and the Class; and

   e. whether Defendants fraudulently failed to disclose that their "light" cigarettes did not deliver less tar and nicotine than "non-light" cigarettes of the same brand.

13. A class action is superior to the other mechanisms for the fair and efficient adjudication of this controversy because the burden and expense of litigation would likely make it impossible for the members of the Class to seek redress for the conduct

complained of herein on an individual basis. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. Plaintiff anticipates that there will be no difficulty in the management of this action as a class action.

## ALLEGATIONS COMMON TO ALL COUNTS

14. Defendants, Philip Morris and Altria, marketed, manufactured, distributed and sold light cigarettes in Louisiana and throughout the United States. Defendants sold their cigarettes under various brand names, including Marlboro Lights.

15. In the 1960's, scientific studies began correlating higher tar and nicotine levels with an increased risk of developing a smoking related disease, such as lung cancer. This information led to a growing demand for cigarettes with less tar and nicotine.

16. In response, Defendants developed, manufactured, marketed, and sold light cigarettes that purported to deliver less tar and nicotine than regular cigarettes. Defendants intended for consumers to perceive their light cigarettes as delivering less tar and nicotine and as being less harmful than regular full-flavored cigarettes of the same brand.

17. Defendants attempted to ease consumers' minds regarding the dangers of smoking by offering their light cigarettes under an umbrella of less tar and nicotine.

18. Defendants implemented their "lights" advertising campaign throughout the Class period, utilizing the "lights," "ultra-lights," and low-tar descriptors on their cigarettes, including on their cigarette packaging.

19. Defendants intended for consumers to interpret the "Light" label on their

cigarettes as signifying that their light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand.

20. Defendants were aware that the Cambridge Filter Method, a test used by the tobacco industry to test the tar and nicotine content of cigarettes, reflected that less tar and nicotine were ingested by smokers of cigarettes than was actually the case.

21. Defendants designed their light cigarettes to register lower levels of tar and nicotine when tested through the Cambridge Filter Method than were actually delivered to consumers of their light cigarettes.

22. An article published by the National Cancer Institute states that "light cigarettes trick the smoking machine," whereby:

- a. Tobacco companies designed light cigarettes with tiny pinholes on the filters. These "filter vents" dilute cigarette smoke with air when light cigarettes are "puffed" on by smoking machines, causing the machines to measure artificially low tar and nicotine levels.

- b. Many smokers do not know that their cigarette filters have vent holes. The filter vents are uncovered when cigarettes are smoked on smoking machines. However, filter vents are placed just millimeters from where smokers put their lips or fingers when smoking. As a result, many smokers block the vent - which actually turns the light cigarette into a regular cigarette.

- c. Some cigarette makers increased the length of the paper wrap covering the outside of the cigarette filter, which decreases the number of puffs that occur during the machine test. Although tobacco under the wrap is still available to the smoker, this tobacco is not burned during the machine test. The result is that the machine test measures less tar and nicotine levels than is available to the smoker.

- d. Because smokers, unlike machines, crave nicotine, they may inhale more deeply; taking larger, more rapid, or more frequent puffs; or smoke a few extra cigarettes each day to get enough nicotine to satisfy their craving. This is called "compensating," and it means that smokers end up inhaling far more tar, nicotine, and other harmful chemicals than the machine-based numbers suggest.

*The Truth About "Light" Cigarettes: Questions and Answers, National Cancer Institute,* available at http://www.cancer.gov/cancertopics/factsheet/Tobacco/light-cigarettes (last visited April 23, 2009). These statements are true and Plaintiff adopts each of them as allegations herein.

23. Defendants intentionally manipulated the design and content of their light cigarettes through, *inter alia*, modifying the tobacco blend, weight, rod length and circumference; using reconstituted tobacco sheets and expanded tobacco; and through intentionally increasing smoke PH levels through chemical processing and the use of additives, such as ammonia, resulting in the delivery of greater amounts of tar and nicotine to consumers.

24. The design of Defendants' light cigarettes increases ventilation, producing smoke that is more mutagenic per milligram of tar than the smoke of non-light cigarette.

25. Defendants have known for decades that filtered and low tar cigarettes do not offer a meaningful reduction of risk to smokers, and that their marketing, which emphasized reductions in tar and nicotine, was false and misleading.

26. Defendants failure to disclose that smoking their light cigarettes can deliver more tar and nicotine to consumers than smoking their regular cigarettes of the same brand, e.g., because of increases in the mutagenicity of the smoke constituents received by smokers of light cigarettes. On information and belief, the design of Defendants' "light" cigarettes increases ventilation, producing smoke that is more mutagenic per milligram of tar than the smoke of "non-light" cigarettes.

27. The United States Governments's National Cancer Institute (NCI) has concluded that smoking light cigarettes rather than regular cigarettes provides no benefit

to smokers' health. This statement by the NCI is true and Plaintiff alleges it herein.

28. An article published by the NCI states that, "researchers also found that the strategies used by the tobacco industry to advertise and promote light cigarettes are intended to reassure smokers, to discourage them from quitting, and to lead consumers to perceive filtered and light cigarettes as safer alternatives to regular cigarettes." This statement is true and Plaintiff alleges it herein.

29. Defendants were aware, through their own internal research, that consumers of their light cigarettes often inhale as much or more nicotine and tar than consumers of their non-light cigarettes through unconsciously covering filter ventilation holes with their lips or fingers, taking larger or more frequent puffs, and through holding smoke in their lungs longer than smokers of non-light cigarettes. Due to this smoker "compensation," the light cigarettes do not present a lower health risk to consumers than regular cigarettes

30. Dr. William Farone, a scientist employed by Philip Morris for eighteen (18) years, has acknowledged that Defendants possessed a "superior knowledge of compensation" and that "there was an 'effort on the part of [his] coworkers at Philip Morris, including [his] supervisors, to restrict any public acknowledgment on the part of Philip Morris of the phenomena of compensation.'" Dr. Farone's aforesaid statements are true and Plaintiff alleges each of them herein.

31. Defendants failed to disclose to Plaintiff and the Class that consumers of their light cigarettes would not be exposed to less tar or nicotine than consumers of non-light cigarettes of the same brand.

32. At all relevant times, Defendants, including their executives who directed their corporate activities, were aware of and accepted the fact that the nicotine present in their

cigarettes was primarily responsible for consumers' addiction to smoking, and were aware of and accepted the fact of smoker compensation.

33. Plaintiff, Carlton A. Newman, has regularly purchased packs of Marlboro Lights.

## COUNT I

### Fraud

34. Plaintiff realleges and incorporates Paragraphs 1-33, as if fully set forth herein this Count I.

35. Defendants unlawfully and fraudulently failed to disclose to Plaintiff and the Class, throughout the Class period and at the time they purchased Defendants' "lights" cigarettes at retail (*e.g.,* via public disclosure, signs dedicated for retail stores, and otherwise), that their light cigarettes did not deliver less nicotine or tar and were not less harmful than regular cigarettes of the same brand.

36. Defendants failure to disclose to Plaintiff and Class members that their light cigarettes did not deliver less nicotine or tar and were not less harmful than regular cigarettes of the same brand constituted fraud pursuant to La. Civil Code Article 1953:

> Fraud is a misrepresentation or a suppression of the truth
> made with the intention either to obtain an unjust advantage
> for one party or to cause a loss of inconvenience to the other.
> Fraud may also result from silence or inaction.

37. Defendants misrepresented their light cigarettes as "Light" or "Ultra-Light" on their product packaging and in all of their advertisements during the Class period, and designed their light cigarettes to register lower levels of tar and nicotine than actually

delivered to consumers when tested through the Cambridge Filter Method, used by the tobacco industry to test cigarettes, in order to justify their representation of the cigarettes as "Light" or "Ultra-Light."

38. Defendants failed to disclose relevant information concerning these light cigarettes, as set forth herein, to induce Plaintiff and the Class to purchase light cigarettes.

39. As the manufacturer, distributor, marketer and seller of light cigarettes, Defendants had an obligation to inform Plaintiff and the Class that their light cigarettes did not deliver less tar or nicotine and were not less harmful than regular cigarettes of the same brand.

40. As a result of Defendants' fraud, pursuant to La. Civil Code Article 1953, Plaintiff and the Class have been damaged in an amount not less than the purchase price of Defendants' light cigarettes or a portion thereof, plus interest.

**THEREFORE,** Plaintiff, on behalf of himself and all others similarly situated demands compensatory and punitive damages in an amount to be determined upon trial of this matter.

## COUNT II

### Unjust Enrichment/Enrichment Without Cause

41. Plaintiff realleges and incorporates paragraphs 1-40, as if fully set forth herein in this Count II and alleges this count in the alternative.

42. Defendants have knowingly received, and continue to receive, a substantial benefit at the expense of Plaintiff and each individual Class member.

43. Defendants' profits would have been reduced but for their wrongful and unlawful conduct.

44. Pursuant to La. Civil Code Article 2298, it would be unjust and unconscionable to permit Defendants to enrich themselves without cause, at the expense of Plaintiff and each Class member and to retain the excessive profits that Defendants wrongfully obtained from Plaintiff and other Class members.

45. As a result of Defendants unjust enrichment Plaintiff and the Class are entitled to compensation in an amount to be determined at trial.

**THEREFORE,** Plaintiff, on behalf of himself and all others similarly situated, seeks restitution and/or disgorgement of the profits wrongfully derived from Plaintiff and each Class member, respectively, as well as other equitable relief as the Court deems appropriate.

## **COUNT III**

### **Negligence and Gross Negligence**

46. Plaintiff realleges and incorporates Paragraphs 1-45, as if fully set forth in this Count III and alleges this count in the alternative.

47. All of the foregoing acts and omissions complained of were committed by Defendants in a negligent and grossly negligent manner.

48. Defendants owed Plaintiff and the Class the duty to refrain from misleading them as set forth herein, and Defendants breached this duty, proximately causing damages of an amount not less than the purchase price of Defendants' light cigarettes or a portion thereof, plus interest.

49. Defendants' aforementioned grossly negligent acts were wilful and malicious, and were of such a depraved nature as to evince a wanton disregard for the lives and health of Plaintiff and the Class, and therefore make Defendants liable for an award of punitive damages in this case.

**THEREFORE,** Plaintiff, on behalf of himself and all others similarly situated demands compensatory and punitive damages in an amount to be determined upon trial of this matter.

**WHEREFORE,** Plaintiff, on behalf of himself and all others similarly situated, prays that the Court enter judgment against Defendants and in favor of Plaintiff and Class members, and award the following relief:

A. For an order certifying the Class and appointing Plaintiff and his counsel to represent the Class;

B. For an order declaring that Defendants have violated their duty to disclose to Plaintiff and Class members were guilty of fraud pursuant to La. Civil Code Article 1953, unjust enrichment pursuant to La. Civil Code Article 2298, negligence and gross negligence, all as alleged herein;

C. Award actual, compensatory and consequential damages to Plaintiff and the Class, but not damages for personal injury or health care claims;

D. Award restitution of monies or portions thereof that Plaintiff and the Class paid at retail for Defendants' light cigarettes, and disgorgement of profits Defendants received from their sale of light cigarettes to Plaintiff and the Class, as provided under applicable law;

E. Establish a constructive trust consisting of monies Defendants unlawfully received from the sale of light cigarettes to Plaintiff and the Class as alleged herein,

partly for reimbursing the Plaintiff and the Class for their economic damages and also for purposes of establishing a smoker cessation program for their benefit.

## JURY DEMAND

Pursuant to the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury.

Respectfully submitted:

THE CROW LAW FIRM, L.L.C.

_____
MICHAEL G. CROW   [4626]
643 Magazine Street, Suite 300
New Orleans, Louisiana 70130
Telephone: 504.599.5770
Facsimile: 504.588.9750
Email:  mgc@mgcrowlaw.com